KARISH & BJORGUM PC
A. Eric Bjorgum (SBN 198392)
119 E. Union Street, Suite B
Pasadena, CA  91103
Telephone:  (213) 785-8070
Facsimile: (213) 995-5010
Email:     eric.bjorgum@kb-ip.com

Attorneys for Defendant THE END
RECORDS, INC.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| GLENN DANZIG, an individual; and EVILIVE MUSIC LLC, a California limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> THE END RECORDS, INC., a New York Corporation and DOES 1-10, . <br><br> Defendant. | Case No. 2:18-cv-05936 <br><br> **DECLARATION OF ERIC BJORGUM IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL** |

**DECLARATION OF ERIC BJORGUM**

I, Eric Bjorgum, declare as follows:

1.     I am an attorney duly admitted to practice before this Court and an attorney in the law firm Karish & Bjorgum, PC, counsel for Defendant The End Records, Inc. ("Defendant").  I have personal knowledge of the matters stated in this declaration, and, if called as a witness, could and would testify competently thereto.  I submit this declaration in support of Defendant's Notice of Removal.

2.     Attached hereto as **Exhibit A** is a true and correct copy of Plaintiffs Glenn Danzig and Evilive Music, LLC's ("Plaintiffs") July 8, 2016 Complaint (the "Complaint") filed in Superior Court of the State of California For the County of Los Angeles, Case No. BC 626555 (the "Los Angeles Case").  The Complaint alleges that Plaintiff Glenn Danzig is a resident of Los Angeles, California.  (¶ 1.) The Complaint alleges that the co-plaintiff, Evilive Music LLC, is a "limited liability company organized and existing under the laws of the State of California. (¶ 2.)  The sole defendant named in the Complaint is Defendant The End Records LLC, a "limited liability company organized and existing under the laws of the state of California."  (¶ 3.)

3.     Attached hereto as **Exhibit B** is a true and correct copy of the Summons served on The End Records, LLC in the state court action.

4.     Attached hereto as **Exhibit C** is a true and correct copy of Plaintiffs' July 6, 2018, *Ex Parte* Application to File Amendment to Complaint Correcting Mistake in the Name of Defendant ("Plaintiffs' Ex Parte.")  The Notice portion of Plaintiffs' Ex Parte states: "plaintiffs … hereby apply … for an order permitting the filing of an amendment to the complaint to correct a mistake as to the name of defendant The End Records, Inc., a New York Corporation, which was sued erroneously herein as the End Records, LLC, a California limited liability company."  Exhibit 1 to Plaintiffs' Ex Parte is Plaintiffs' proposed amendment to the Complaint.  Plaintiffs' proposed amendments replace all references to the California entity The End Records, LLC with references to the New York entity The End Records Inc.  At the hearing on Plaintiffs' Ex Parte, the judge's tentative

was to grant Plaintiffs' *ex parte* application although he allowed Defendant to file any opposition to Plaintiffs' Ex Parte by Monday July 9, 2018.  Defendant The End Records, Inc. has decided to submit on the tentative and will not file any opposition to Plaintiffs' Ex Parte.

5.     Attached as Exhibit 2 to **Exhibit C** is a true and correct copy of Defendant's February 27, 2014, Notice of Removal filed in Case 2:14-cv-01470 in United States District Court – Central District of California.  Plaintiffs initially sued The End Records, LLC, a suspended California entity, on January 24, 2014 in the Superior Court in and for the County of Los Angeles, entitled *Glenn Danzig and Evilive Music, LLC*, Case No. BC534235 (the "First State Court Action.")

6.     Attached hereto as **Exhibit D** are true and correct copies of all orders served on Defendant the End Records, LLC in the Los Angeles case.

7.     Attached hereto as **Exhibit E** is a true and correct copy of Plaintiffs' June 27, 2018, Trial Brief.  In the trial brief, Plaintiffs state that they seek $443,349 in damages.

8.     Attached as Exhibit A to **Exhibit E** is a true and correct copy of the March 15, 2010, music distribution agreement between Plaintiff Evilive Music, LLC and The End Records, Inc.

9.     After Defendant removed the Prior State Court Action to federal court, Plaintiffs dismissed their claims without prejudice.

10.  When Plaintiffs filed the second state court lawsuit, Plaintiffs' counsel claimed that Plaintiffs intended to settle the case prior to trial and indicated that Plaintiffs sought a $50,000-$75,000 recovery.

11.    Pursuant to a conference of counsel that occurred after Plaintiffs disclosed their true damage number, Defendant informed Plaintiff that it intended to move to dismiss Plaintiff's complaint for naming a party with no connection to this lawsuit, The End Records, LLC.

1

2

3

4

5      I declare under penalty of perjury under the laws of the United States that the

6 foregoing is true and correct. Executed this 6th day of June, 2018, at Pasadena,

7 California.

8

9                                      */s/ Eric Bjorgum*

10                                        Eric Bjorgum

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF ERIC BJORGUM ISO DEFENDANT'S NOTICE OF REMOVAL

# Exhibit A

1  KING, HOLMES, PATERNO & SORIANO, LLP
   HOWARD E. KING, ESQ., STATE BAR NO. 77012
2  STEPHEN D. ROTHSCHILD, ESQ., STATE BAR NO. 132514
   ROTHSCHILD@KHPBLAW.COM
3  1900 AVENUE OF THE STARS, 25TH FLOOR
   LOS ANGELES, CALIFORNIA 90067-4506
4  TELEPHONE:   (310) 282-8989
   FACSIMILE:   (310) 282-8903
5
   Attorneys for Plaintiffs GLENN DANZIG and
6  EVILIVE MUSIC, LLC, a California limited
   liability company
7

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JUL 0 8 2016

Sherri R. Carter, Executive Officer/Clerk
By Shaunya Bolden, Deputy

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9           FOR THE COUNTY OF LOS ANGELES - CENTRAL DISTRICT

10

11  GLENN DANZIG, an individual; and            CASE NO.   BC 6 2 6 5 5 5
    EVILIVE MUSIC, LLC, a California limited
12  liability company,                          COMPLAINT FOR:

13              Plaintiffs,                      1) Breach of Contract
                                                2) Unfair Competition
14       vs.                                     3 Intentional; Interference with Prospective
                                                   Business Advantage
15  THE END RECORDS, LLC, a California          4) An Accounting
    limited liability company; and DOES 1
16  through 10, inclusive,

17              Defendants.

18

19       Plaintiffs Glenn Danzig ("Danzig") and Evilive Music, LLC ("Evilive") (collectively,

20  "plaintiffs") hereby allege as follows:

21       1.      Danzig is and at all times material herein has been an internationally acclaimed

22  recording artist and a resident of the County of Los Angeles, California.

23       2.      Evilive is and at all times material herein has been a limited liability company

24  organized and existing under the laws of the State of California, in the business of exploiting

25  Danzig's recordings and other products.

26       3.      Defendant The End Records LLC ("defendant") is and at all times material herein

27  has been a limited liability company organized and existing under the laws of the State of

28  California.

3421.064/1046167.1
COMPLAINT

4.      On information and belief, in addition to its formation and existence under California law, at all times material herein defendant has regularly and systematically conducted business in the State of California by directing sales and marketing efforts to consumers in California and negotiating and entering into recording agreements, distribution agreements, and other contracts with recording artists and other persons and entities who are California residents. Defendant's principal, Andreas Katsambas ("Katsambas"), regularly travels to California from defendant's offices in Brooklyn, New York to conduct business on behalf of defendant. Katsambas and other employees and/or agents of defendant regularly communicate with California residents by email, telephone, and U.S. Mail.  As a condition of its formation and existence under the laws of California, defendant has an agent for service of process in this State.

5.      Plaintiffs sue Does 1 through 10, inclusive, herein under fictitious names.  Plaintiffs do not know their true names and capacities.  When plaintiffs ascertain the Doe defendants' true names and capacities, plaintiffs will amend this complaint by inserting their true names and capacities herein.  On information and belief each defendant named herein as a Doe acted with the other defendants and is responsible for the damages to plaintiffs herein alleged.  Each reference in this complaint to defendants, or to any of them, also refers to all defendants sued under fictitious names.

6.      On information and belief at all times material herein each of the defendants was the agent and employee of the other defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and employment.

7.      As of April 9, 2014, plaintiff and defendant agreed, in writing, to toll the running of any and all statutes of limitations as of January 24, 2014 with respect to any and all claims, counterclaims and defenses that they had or may have had against each other, and which were not already barred by any applicable statute of limitations as of January 24, 2014.  Plaintiff and defendant further agreed that either of them could terminate the tolling agreement upon 30 days written notice.  The tolling agreement was terminated effective April 22, 2016.

/ / /

/ / /

## FIRST CAUSE OF ACTION

### (Breach of Contract")

8.      Plaintiffs reallege and incorporate by reference paragraphs 1 through 7, inclusive above, as though fully set forth.

9.      Evilive and defendant are parties to a written distribution agreement effective March 15, 2010 (the "Agreement") pursuant to which Evilive granted defendant the right to distribute, sell, promote and advertise Evilive's catalog of Danzig's recordings and other products in the United States and Canada (the "Territory") for a five year term, and defendant agreed to pay Evilive a share of the proceeds from sales of Danzig's recordings and other products.

10.      Danzig is an intended third party beneficiary of the Agreement entitled to enforce defendant's obligations thereunder.  Evilive and defendant entered into the Agreement to distribute Danzig's recordings and other products and to pay him a share of the proceeds.

11.      Evilive has performed all conditions, covenants and promises required on its part to be performed under the Agreement, except those that were excused, waived or rendered impossible to perform.

12.      From and after September 30, 2010, defendant has breached the Agreement by

(a)      Failing and refusing to account to Evilive for and pay Evilive its share of revenues from sales of copies of Danzig's book "Danzig: Hidden Lyrics of the Left Hand" (the "Book") and of the album entitled "Danzig 5 Blackaciddevil" (the "Album") that Danzig delivered to defendants' distributor, Red Music ("Red"), at defendant's specific request and instruction;

(b)      Failing and refusing to reimburse plaintiff in excess of $1,000 that plaintiff incurred delivering copies of the Book and the Album to Red;

(c)      Selling, through Red, copies of Danzig's 2010 album "Deth Red Saboath," and possibly other Danzig albums and products, outside the Territory;

(d)      Through Red, dumping copies of "Deth Red Saboath" in and outside of the Territory, by selling them at prices at or below "budget" prices and unfairly competing with sales through legitimate channels.  Plaintiffs are informed and believe that The End engaged in dumping other Danzig recordings and products in and outside of the Territory; and

1              (e)     Failing and refusing to account, and/or failing and refusing to properly

2    account, to Evilive for sales of Danzig recordings and other products.

3          13.     As a result of defendant's breaches of the Agreement, plaintiffs have suffered

4    damages in an amount to be proven at trial in excess of $250,000, including revenues from lost

5    sales of Danzig recordings and other products, diminution of the value of Danzig's recordings and

6    other products; lost opportunities to secure distribution in countries outside of the Territory and in

7    the Territory; and lost opportunities to secure advances from distributors and others against future

8    sales and other exploitations of Danzig recordings and property.

9    <center>**SECOND CAUSE OF ACTION**</center>

10   <center>**(Unfair Competition, California Bus. & Prof. Code § 17200 et seq.)**</center>

11         14.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 13, inclusive

12   above, as though fully set forth.

13         15.     Defendant's product dumping alleged hereinabove constitutes an unlawful, unfair,

14   and fraudulent business practice and misleading advertising under California Business &

15   Professions Code § 17200 et seq.

16         16.     Plaintiffs have been damaged and will continue to be damaged by defendant's

17   unlawful, unfair, and fraudulent business practices and misleading advertising, as described above.

18         17.     Plaintiffs are entitled to an injunction prohibiting defendant from continuing the

19   practices described above, and to restitution of all amounts acquired by defendant by means of its

20   acts of unfair competition.

21   <center>**THIRD CAUSE OF ACTION**</center>

22   <center>**(Intentional Interference with Prospective Business Advantage)**</center>

23         18.     Plaintiffs incorporate paragraphs 1 through 17, above, as though fully set forth.

24         19.     Defendant's product dumping created a perception among potential distributors of

25   Danzig's recordings and other products that the value of the recordings and products was

26   diminished.

27         20.     As a result of the false perception that defendant's product dumping caused,

28   plaintiffs have been unable to secure distribution of Danzig's recordings and other products in

1   Europe as well as North America and, therefore, plaintiffs have not received lucrative advances

2   against future exploitations and profits that Danzig's artistic output would otherwise have

3   generated for plaintiffs, in an amount to be proved at trial.

4        21.     Defendant engaged in the aforementioned conduct with the intention to thereby

5   deprive plaintiffs of property or legal rights or otherwise to cause injury, and subjected plaintiffs

6   to cruel and unjust hardship in conscious disregard of plaintiffs' rights, so as to justify an award of

7   exemplary and punitive damages.

8   <div align="center">**FOURTH CAUSE OF ACTION**</div>

9   <div align="center">**(For an Accounting)**</div>

10        22.     Plaintiffs incorporate by reference as though fully set forth paragraphs 1 through 21

11   above, inclusive.

12        23.     The amount of royalties and other receipts due from defendant to plaintiffs for sales

13   of Danzig's recordings and other products is unknown to plaintiffs and cannot be ascertained

14   without an accounting of defendant's receipts and expenses with respect to such material.

15        WHEREFORE, plaintiffs pray for damages, as follows:

16        1.     For compensatory damages in an amount to be proved at trial, plus interest at the

17   legal rate;

18        2.     For punitive damages;

19        3.     For costs incurred herein; and

20        4.     For such other and further relief as the Court deems just and proper.

21   DATED:     July 8, 2016     KING, HOLMES, PATERNO & BERLINER, LLP

22

23

24   By: _____

25        STEPHEN D. ROTHSCHILD

     Attorneys for Plaintiffs GLENN DANZIG and

26        EVILIVE MUSIC, LLC, a California limited liabiltiy

     company

27

28

# Exhibit B

# SUMMONS
## *(CITACION JUDICIAL)*

**SUM-100**

**NOTICE TO DEFENDANT:** THE END RECORDS, LLC, a
*(AVISO AL DEMANDADO):* California limited liability
company; and DOES 1 through 10, inclusive,

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**FILED**
Superior Court of California
County of Los Angeles

JUL 08 2016

Sherri R. Carter, Executive Officer/Clerk
By _____ Deputy
       Shaunya Bolden

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
GLENN DANZIG, an individual; and EVILIVE MUSIC, LLC,
a California limited liability company,

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso)* **BC 6 26 555** |
|---|---|

LOS ANGELES SUPERIOR COURT
111 North Hill Street
111 North Hill Street
Los Angeles, California 90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Howard E. King, Esq. - SBN 077012          (310) 282-8989  (310) 282-8903
Stephen D. Rothschild, Esq. - SBN 132514
KING, HOLMES, PATERNO & SORIANO, LLP
Los Angeles, California 90067-4506

| DATE: JUL 08 2016 *(Fecha)* | Clerk, by _____ , Deputy |
|---|---|
| | *(Secretario)*          *(Adjunto)* |

SHERRI R. CARTER
SHAUNYA BOLDEN

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)            ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
       ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | **SUMMONS** |  Legal Solutions Plus | Code of Civil Procedure §§ 412.20, 465 3421.064 |
|---|---|---|---|

# Exhibit C

1 | KING, HOLMES, PATERNO & SORIANO, LLP
HOWARD E. KING, ESQ., STATE BAR NO. 77012
2 | STEPHEN D. ROTHSCHILD, ESQ., STATE BAR NO. 132514
SROTHSCHILD@KHPSLAW.COM
3 | 1900 AVENUE OF THE STARS, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90067-4506
4 | TELEPHONE:   (310) 282-8989
FACSIMILE:   (310) 282-8903
5
Attorneys for Plaintiffs GLENN DANZIG and
6 | EVILIVE MUSIC, LLC

7

8 |                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 |              FOR THE COUNTY OF LOS ANGELES - CENTRAL DISTRICT

10

11 | GLENN DANZIG, an individual; and          CASE NO. BC626555
EVILIVE MUSIC, LLC, a California limited    Hon. Daniel S. Murphy, Dept. 32
12 | liability company,
                                           **PLAINTIFFS' *EX PARTE* APPLICATION
13 |              Plaintiff,                  TO FILE AMENDMENT TO
                                           COMPLAINT CORRECTING MISTAKE
14 |      vs.                                IN THE NAME OF DEFENDANT;
                                           MEMORANDUM OF POINTS AND
15 | THE END RECORDS, LLC, a California       AUTHORITIES; AND DECLARATION
limited liability company; and DOES 1      OF STEPHEN D. ROTHSCHILD**
16 | through 10, inclusive,
                                           Date:    July 6, 2018
17 |              Defendant.                  Time:    8:30 a.m.
                                           Dept.:   32
18

19
                                           Action Filed:   July 8, 2016
20 |                                          Trial Date:     July 10, 2018

21 |        TO THE ABOVE-ENTITLED COURT AND TO ALL PARTIES AND THEIR

22 | ATTORNEYS OF RECORD:

23 |        PLEASE TAKE NOTICE that plaintiffs Evilive Music, LLC and Glenn Danzig

24 | (collectively, "plaintiffs"), hereby apply, *ex parte* pursuant to Code of Civil Procedure

25 | section 473(a)(1), for an order permitting the filing of an amendment to the complaint to correct a

26 | mistake as to the name of defendant The End Records, Inc., a New York Corporation, which was

27 | sued erroneously herein as The End Records, LLC, a California limited liability company.  A copy

28 | of the proposed amendment is attached to the attached declaration of Stephen D. Rothschild as

3421.064/1328805.1

PLAINTIFFS' *EX PARTE* APPLICATION TO FILE AMENDMENT TO COMPLAINT

1    **Exhibit** 1 and to the proposed order submitted herewith.  Alternatively, if the Court deems the

2    filing of an amended complaint appropriate, plaintiffs request that the Court order them to file an

3    amended complaint correcting the defendant's name, pursuant to CRC 3.1324(c).

4           The grounds for the application are that the proposed amendment is to correct the name of

5    defendant, the name was alleged incorrectly through inadvertence, the requested changes are

6    minor, the amendment is justified, and defendant The End Records, Inc., which has at all times

7    known that it was the real party in interest and the defendant herein, will suffer no prejudice as a

8    result of the amendment.

9           The application will be based on this application, the attached memorandum of points and

10   authorities and declaration of Stephen D. Rothschild, the proposed amendment filed herewith, the

11   Court's file herein, and on such other matters as may be presented at the hearing on the

12   application.

13   DATED:        July 5, 2018              KING, HOLMES, PATERNO & SORIANO, LLP

14

15

16                                          By: _____
                                                STEPHEN D. ROTHSCHILD
17                                              Attorneys for Plaintiffs GLENN DANZIG and
                                                EVILIVE MUSIC, LLC

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This application is for leave to file an amendment to the complaint correcting defendant's name and entity description. Inadvertently defendant was sued as "The End Records, LLC." Defendant's actual name is The End Records, Inc. ("defendant").

The reason for the mistake was that counsel based the complaint on an earlier-filed complaint that plaintiffs had filed against defendant, in which defendant also was incorrectly named, *Glenn Danzig, et al. v. The End Records, LLC, etc.*, Case No. BC534235, filed June 24, 2014. Defendant removed that case to federal court, the parties engaged in settlement discussions, and plaintiffs dismissed the complaint based on defendant's commitment to conduct a joint audit. When defendant did not follow through on that commitment, plaintiffs filed the instant action on July 8, 2016, using essentially the same complaint it had filed in 2014. (Andreas Katsambas, the principal of The End Records, Inc., a New York corporation, also had an entity called "The End Records, LLC" formed in California.)

The amendment will not prejudice defendant. Defendant has known at all times that it was the defendant herein, retained counsel, produced business records concerning the transactions at issue, engaged in settlement and other discussions that included its principal, Mr. Katsambas, and has at all times treated this matter consistent with the understanding that it was the defendant and real party-in-interest in this case.

## II. THIS *EX PARTE* APPLICATION IS THE PROPER VEHICLE TO CORRECT AN ERROR IN DEFENDANT'S NAME

"The court may grant permission on *ex parte application* to amend a pleading 'by adding or striking out the *name* of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect . . . [CCP §473(a)(1)]." Weil & Brown, TRG *Civil Procedure Before Trial*, Pleadings, ¶ 6:618 (emphasis in original). Mistakes as to "*form or party identity*" are correctable *ex parte. Id.*, ¶ 6:619.

In this case, plaintiffs seeks to correct defendant's name, so that instead of the complaint identifying defendant incorrectly as "The End Records, LLC, a California limited liability

1  company," it correctly identifies defendant as "The End Records, Inc., a New York corporation."

2  Plaintiffs do not seek any other changes to the complaint.

3  **III.    THERE IS NO GROUND TO DENY THE INSTANT APPLICATION**

4          Absent prejudice to a party, it is an abuse of discretion to deny an amendment even if it is

5  made as late as the time of trial.  Weil & Brown, TRG, *Civil Procedure Before Trial*, Pleading, ¶

6  653 ("[i]f delay in seeking the amendment has not misled or prejudiced the other side, the liberal

7  policy of allowing amendments prevails.  Indeed, it is an *abuse of discretion* to deny leave in such

8  a case, even if sought as late as the time of trial" (emphasis in original, citing *Higgins v. Del Faro*

9  (1981) 123 Cal.App.3d 558, 564-565.)

10         In this case, defendant will suffer no prejudice as a result of the requested correction.

11  Defendant has always known that it was the real-party-interest.  For example, defendant removed

12  the earlier case that plaintiffs filed from state court to federal court.  (Plaintiffs dismissed that case

13  in the hope that the parties could resolve their dispute without litigation.)  In the Notice of

14  Removal, defendant identified itself as follows:

15              PLEASE TAKE NOTICE that defendant The End Records, Inc., a
               New York Corporation (erroneously identified in the initial
16              complaint as "The End Records, LLC", a suspended California
               limited liability company) …

17

18         (Rothschild Decl., Ex. 2, p. 2, lines 2-4.)

19         In addition, defendant has at all times litigated this case and dealt with plaintiffs as if it

20  were the real party-in-interest, providing documents and business records from the transactions at

21  issue, discussing settlement and a joint audit, and otherwise fully participating in the litigation.

22  Defendant's principal, Andreas Katsambas, has participated in conversations with counsel for

23  plaintiffs concerning providing documents, participating in a joint audit, and settlement.

24  ///

25  ///

26  ///

27  ///

28  ///



## IV.  CONCLUSION

For each of the foregoing reasons, plaintiffs respectfully request that this Court grant the instant application and permit the filing of the amendment to the complaint attached hereto as **Exhibit 1** and attached as **Exhibit 1** to the proposed order submitted herewith.

DATED:      July 5, 2018                    KING, HOLMES, PATERNO & SORIANO, LLP


By: _____
                        STEPHEN D. ROTHSCHILD
Attorneys for Plaintiffs GLENN DANZIG and
EVILIVE MUSIC, LLC

KING, HOLMES,
PATERNO &

5



**DECLARATION OF STEPHEN D. ROTHSCHILD**

I, Stephen D. Rothschild, declare:

1.      I am an attorney licensed to practice before all of the courts of this State and am a partner of King, Holmes, Paterno & Soriano, LLP, attorneys for plaintiffs Evilive Music, LLC and Glenn Danzig ("plaintiffs"). I have personal knowledge of the matters below and could and would testify competently to them if asked.

2.      Attached hereto as **Exhibit 1** is plaintiffs' proposed amendment to the complaint herein, correcting the name of defendant from "The End Records, LLC, a California limited liability company" to "The End Records, Inc., a New York corporation." The amendment makes no other changes except to correct defendant's name.

3.      Defendant was incorrectly named in the complaint due to an inadvertent error. On January 24, 2014, plaintiffs filed *Glenn Danzig, etc., et al. v. The End Records, LLC, etc., et al.*, Los Angeles Superior Court Case No. BC534235. Defendant removed that case to federal court, and the parties entered into a settlement agreement and a tolling agreement, whereby plaintiffs dismissed the case and the parties agreed to conduct a joint audit to try to resolve their disputes. When I prepared the complaint herein, I used the complaint in Case No. BC534235, inadvertently failing to correct defendant's name.

4.      Defendant The End Records, Inc. has at all times known that it was the true defendant party-in-interest in this dispute and in this lawsuit. Attached hereto as **Exhibit 2** is a true and correct copy of defendant's notice of removal of Case No. BC534235, in which defendant identified itself as "The End Records, a New York Corporation (erroneously identified in the initial complaint as 'The End Records, LLC,' a suspended California limited liability company." (See Ex. 2, p. 2, lines 2-4.)

5.      Defendant has consistently treated this case as if it were the real party-in-interest – producing business records regarding the events and transactions alleged in the complaint, engaging in settlement discussions, and otherwise participating in the litigation.

6.      I have participated in at least three or four telephone conversations with defendant's counsel and a person who identified himself as defendant's principal, Andreas Katsambas,

1   discussing the availability of defendant's business records and defendant's willingness to engage

2   in a joint audit.  Attached hereto as **Exhibit 3** is a true and correct copy of a print out from the

3   New York Department of State, Division of Corporations, identifying Mr. Katsambas as

4   defendant's principal.  Mr. Katsambas' name also appears throughout correspondence between

5   plaintiffs and defendant.

6        **Declaration Re: Notice**

7        7.     Attached hereto as **Exhibit 4** is a true and correct copy of a July 4, 2018, email that

8   I sent to counsel for defendant, Eric Bjorgum, notifying him that plaintiffs intended to appear on

9   July 6, 2018 at 8:30 a.m. in Department 32 of this Court to apply, *ex parte*, for an order allowing

10   plaintiffs to file an amendment to the complaint correcting defendant's name.

11        I declare under penalty of perjury that the foregoing is true and correct.  Executed on

12   July 5, 2018 at Los Angeles, California.

13

14   _____

15   Stephen D. Rothschild

16

17

18

19

20

21

22

23

24

25

26

27

28

1    KING, HOLMES, PATERNO & SORIANO, LLP
     HOWARD E. KING, ESQ., STATE BAR NO. 77012
2    STEPHEN D. ROTHSCHILD, ESQ., STATE BAR NO. 132514
     SROTHSCHILD@KHPSLAW.COM
3    1900 AVENUE OF THE STARS, 25TH FLOOR
     LOS ANGELES, CALIFORNIA 90067-4506
4    TELEPHONE:   (310) 282-8989
     FACSIMILE:    (310) 282-8903

5

     Attorneys for Plaintiffs GLENN DANZIG and
6    EVILIVE MUSIC, LLC

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9          FOR THE COUNTY OF LOS ANGELES - CENTRAL DISTRICT

10

| | |
|---|---|
| 11   GLENN DANZIG, an individual; and EVILIVE MUSIC, LLC, a California limited 12   liability company, | CASE NO. BC626555 Hon. Daniel S. Murphy, Dept. 32 |
| 13            Plaintiff, | **[Proposed] AMENDMENT TO COMPLAINT** |
| 14     vs. | |
| 15   THE END RECORDS, LLC, a California limited liability company; and DOES 1 16   through 10, inclusive, | Action Filed:     July 8, 2016 Trial Date:       July 10, 2018 |
| 17            Defendant. | |

18

19       Plaintiffs Glenn Danzig and Evilive Music, LLC hereby submit the following amendment

20   to their complaint herein:

21         1.      Page 1, lines 15-16, the words "THE END RECORDS, LLC, a California limited

22   liability company," are hereby amended and corrected to state "THE END RECORDS, INC., a

23   New York corporation."

24         2.      Page 1, paragraph 3, lines 26-28, the words "Defendant The End Records LLC

25   ("defendant") is and at all times material herein has been a limited liability company organized

26   and existing under the laws of the State of California " are hereby deleted, and replaced by the

27   words "Defendant The End Records, Inc. ("defendant") is and at all times material herein has been

28   a l~~imited liability company~~ corporation organized and existing under the laws of the State of New York."

   3421.064/1328866.1
   [PROPOSED] AMENDMENT TO COMPLAINT

1      3.    Page 2, lines 1-2, the words "in addition to its formation and existence under

2  California law" are hereby stricken from the complaint.

3

4  DATED:     July 5, 2018        KING, HOLMES, PATERNO & SORIANO, LLP

5

6

7                    By: _____

                              HOWARD E. KING

8                         STEPHEN D. ROTHSCHILD

                    Attorneys for Plaintiffs GLENN DANZIG and

9                    EVILIVE MUSIC, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 2   EXHIBIT 3   EXHIBIT 4

Eric Bjorgum (Bar No. 198392)
Marc Karish (Bar No. 205440)
KARISH & BJORGUM, PC
16 N. Raymond St., Suite 307
Pasadena, California 91101
Telephone:   (213) 785-8070
Facsimile:   (213) 995-5010

Attorneys for Defendant
THE END RECORDS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| GLENN DANZIG, an individual; and EVILIVE MUSIC, LLC, a California limited liability company, | Case No. CV-14-01470 |
| Plaintiffs, | **NOTICE OF REMOVAL** |
| vs. | **REQUEST FOR JURY TRIAL** |
| THE END RECORDS, INC., a New York Corporation and DOES 1-10, | **[Declaration of A. Eric Bjorgum and Declaration of Andreas Katsambas filed concurrently]** |
| Defendants. | |

1

NOTICE OF REMOVAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that defendant The End Records, Inc., a New York Corporation (erroneously identified in the initial complaint as "The End Records, LCC", a suspended California limited liability company) hereby removes to this Court the state court action described below.

**A. Removal Is Timely**

On January 24, 2014, an action was commenced in the Superior Court of the State of California in and for the County of Los Angeles, entitled *Glenn Danzig and Evilive Music, LLC*, Case No. BC534235. (A copy of the complaint is filed herewith as Exhibit "A" to the Declaration of A. Eric Bjorgum ("Bjorgum Decl.")). The Summons is dated January 24, 2014. (Bjorgum Decl., Exh. "B".)

Defendants' removal is timely under 28 U.S.C. § 1446(b), as it is being filed within 30 days of receipt by Defendants, through service or otherwise, of a copy of a pleading from which it may first be ascertained that the case is removable. Defendants were served by certified mail; a certified mail receipt reflecting the date of services shows that the complaint and related documents were sent on January 29, 2014 by mail to New York. (The certified mail receipt obtained from Plaintiff's counsel is attached as Exhibit "E" to the Bjorgum Declaration; proof of service of the summons and complaint on Defendant has not been filed with the Court as of February 26, 2014.) Service was thus effective on ten days later. Cal.Civ.Proc.Code § 415.40. Indeed, even if the Complaint were deemed served on the same day it was mailed, this removal would be timely until or before February 28, 2014.

**B. This Court Has Original Jurisdiction in This Matter**

This is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332, and is one which may be removed to this Court by Defendants pursuant to the provisions of 28 U.S.C. § 1441(b), in that it is a civil action

2

1   between citizens of different states and the matter in controversy exceeds the sum

2   of $75,000, exclusive of interest and costs.

3

4                   1.   <u>The Amount In Controversy Exceeds $75,000</u>

5         The amount in controversy in this matter exceeds $75,000.  As noted by the

6   Ninth Circuit, when considering the amount in controversy in the context of a

7   motion to remand:

8             The district court may consider whether it is "facially apparent" from

9             the complaint that the jurisdictional amount is in controversy. If not,

10            the court may consider facts in the removal petition, and may "require

11            parties to submit summary-judgment-type evidence relevant to the

12            amount in controversy at the time of removal."

13  *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997).

14        Here, Plaintiff alleges damages in excess of $250,000.  The breach of

15  contract claim states:

16            Plaintiffs have suffered damages in an amount to be proven at

17            trial in excess of $250,000, including revenues from lost sales of

18            Danzig recordings and other products, diminution of the value of

19            Danzig's recordings and other products; lost opportunities to secure

20            distribution in countries outside of the Territory and in the Territory;

21            and lost opportunities to secure advances from distributors and others

22            against future sales and other exploitations of Danzig recordings and

23            property.

24  (Complaint, ¶ 12, Bjorgum Decl., Exh. A)

25        Plaintiff Danzig's web site claims that he has sold over 8 million recordings.

26  (http://danzig-verotik.com/danzig/bio.html.)  The complaint states he is "an

27  internationally acclaimed recording artist." (Complaint, ¶ 1.)  Further, the contract

28

NOTICE OF REMOVAL

1    upon which the Complaint is based calls for payment of two installments in the
2    amount of $125,000 each.  (Bjorgum Decl., Exh. "F".)

3        Thus, under these facts – where Plaintiffs claim breach of a contract
4    damages in excess of $250,000, and Plaintiff Danzig is a well-known musician
5    claiming long term damage to his ability to distribute his entire catalog of work of
6    which over 8 million units have been sold -- it is clear that on the breach of
7    contract claim alone, the amount in controversy exceeds $75,000.

8        Moreover, Plaintiffs also claim interference with prospective economic
9    advantage.  In a similar case involving interference with services for a
10   multiplatinum series of records, a jury award compensatory interference damages
11   of $2,279,000 and exemplary damages of $1,500,000 to one party, and
12   compensatory damages of $740,000 and exemplary damages of $1,500,000 to
13   another. The Court of Appeals affirmed, though the trial judge remitted the
14   punitive damage awards to $2,500,000 total.  *Kenneth Brumfield v. Death Row*
15   *Records, Inc.*, B149561, 2003 WL 21966294 (Cal. Ct. App. Aug. 19, 2003).[1]

16       Here, Plaintiffs' allegations in the interference claim state that Defendant has
17   engaged in product dumping, so that "plaintiffs have been unable to secure
18   distribution of Danzig's recordings and other products in Europe as well as North
19   America and, therefore, plaintiffs have not received lucrative advances against
20   future exploitations and profits. . . ."  (Complaint, ¶ 19, Bjorgum Decl., Exh. "A".)
21   As shown by the contract at issue, the right to distribute some of Plaintiffs' works
22   for five years in limited territories was $125,000.  Clearly, the damage caused
23   worldwide would exceed $75,000 if Plaintiffs were to succeed on the interference
24   with prospective economic advantage claim.

25

26

27   _____
     [1] Punitive damages can be relied upon to show amount in controversy if they are probable, which can be introduced
28   by evidence of jury verdicts in similar cases. *Burk v. Med. Sav. Ins. Co.*, 348 F. Supp. 2d 1063, 1069 (D. Ariz.
     2004).

**NOTICE OF REMOVAL**

1    Thus, for the foregoing reasons, the amount in controversy in this matter

2  exceeds $75,000.

3        2.    <u>There Is Complete Diversity of Citizenship Among the Parties</u>

4    The parties in this case are completely diverse.  Plaintiff Danzig is a citizen

5  of California.  Plaintiff Evilive Music, LLC is a limited liability company

6  organized under the laws of California.  According the Secretary of State, its

7  principal place of business is in Encino, California.

8    Defendant The End Records, Inc. is a New York corporation.  (Declaration

9  of Andreas Katsambas, ¶ 2.)

10    Moreover, the citizenship allegation regarding The End Records, LLC

11  should be disregarded for purposes of determining jurisdiction under 28 U.S.C. §

12  1332 and 28 U.S.C. § 1441(b) on the ground that there is no possibility that

13  Plaintiffs will be able to establish liability against The End Records, LLC.  That

14  entity is defunct, not a signatory to the contract, and Plaintiffs has already filed a

15  document substituting out The End Records, LLC for the correct Defendant, The

16  End Records, Inc.  (Amendment to Complaint, Bjorgum Decl., Exh. "C".)

17    As established by the Declaration of Andreas Katsambas, The End Records,

18  Inc. is a New York corporation, and Andreas Katsambas is a New York resident.

19  Further, The End Records, LLC has not been an active company for over five

20  years.  (Decl. of Katsambas at ¶ 3.)  Plaintiff has already admitted that New York

21  corporation is the proper Defendant by filing the correction in the state court

22  substituting the New York defendant for the California defendant.  Indeed, Plaintiff

23  served Defendant at the New York address of The End Records, Inc. – not at the

24  address for The End Records, LLC.  (Certified Mail Receipt, Bjorgum Decl., Exh.

25  "E".)

26    **C.    The Other Requirement for Removal Are Met**

27    The other requirements of removal are also met.  First, venue for removal

28  purposes only is proper in this District and Division.  This District and Division

---

1  embrace the state court action that is now pending, and thus this Court is a proper

2  venue for the action pursuant to 28 U.S.C. § 84(c )(2).[2]

3      Second, Defendant is filing written notice of this removal with the clerk of

4  the state court in which the action is currently pending pursuant to 28 U.S.C. §

5  1446(d).

6      Third, copies of the Notice to Adverse Party of removal to federal court,

7  together with this notice of removal, are being served upon Plaintiff's counsel

8  pursuant to 28 U.S.C. § 1446(d).

9      Finally, there are no cases presently pending in this Court that relate to the

10  action that is the subject of this notice of removal.

11      Wherefore, Defendant hereby removes to this Court from the Superior

12  Court for the State of California in the County of Los Angeles. Defendant prays for

13  such other and further relief to which it may be entitled, both at law and in equity.

14

15

16  Dated:  February 27, 2014       Respectfully submitted,

17

18

19          By: /s/

20          A. Eric Bjorgum

        KARISH & BJORGUM PC

21          Attorneys for Defendant THE END

        RECORDS, INC.

22

23

24

25

26

27

28

[2] Defendant maintains that proper venue for this case is in New York because of the parties' mandatory forum selection clause. But for removal purposes, the case is properly here until transferred or dismissed.

6

NOTICE OF REMOVAL

# NYS Department of State

## Division of Corporations

### Entity Information

The information contained in this database is current through July 3, 2018.

Selected Entity Name: THE END RECORDS, INC.

Selected Entity Status Information

**Current Entity Name:** THE END RECORDS, INC.
**DOS ID #:** 3397640
**Initial DOS Filing Date:** AUGUST 07, 2006
**County:** KINGS
**Jurisdiction:** NEW YORK
**Entity Type:** DOMESTIC BUSINESS CORPORATION
**Current Entity Status:** ACTIVE

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
THE END RECORDS, INC.
94 BOGART STREET
BROOKLYN, NEW YORK, 11206

**Chief Executive Officer**

ANDREAS KATSAMBAS
94 BOGART STREET
BROOKLYN, NEW YORK, 11206

**Principal Executive Office**

THE END RECORDS, INC.
96 BOGART STREET
BROOKLYN, NEW YORK, 11206

**Registered Agent**

NONE

This office does not record information regarding the
names and addresses of officers, shareholders or

Entity Information

directors of nonprofessional corporations except the chief executive officer, if provided, which would be listed above. Professional corporations must include the name(s) and address(es) of the initial officers, directors, and shareholders in the initial certificate of incorporation, however this information is not recorded and only available by viewing the certificate.

## *Stock Information

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| 200 | No Par Value | |

*Stock information is applicable to domestic business corporations.

## Name History

| Filing Date | Name Type | Entity Name |
|---|---|---|
| AUG 07, 2006 | Actual | THE END RECORDS, INC. |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results   New Search

Services/Programs   |   Privacy Policy   |   Accessibility Policy   |   Disclaimer   |   Return to DOS
Homepage   |   Contact Us

Stephen D. Rothschild

From:
Sent:
To:
Cc:
Subject:

Stephen D. Rothschild
Wednesday, July 04, 2018 2:14 PM
'Eric Bjorgum'
Christian Anstett; Karen Sloane; Aaron Rosenberg
RE: Have you decided on your ex parte?

Thanks for letting me know. We will also appear ex parte on Friday at 8:30 a.m. in Dept. 32 at 111 North Hill St., LA CA to request that the court allow us to file an amendment to the complaint correcting the name of the defendant, which was the result of an inadvertent error. Since you know the correct name and place of incorporation, and have repeatedly stated on and off the record that the reason you did not defend the case more vigorously was your belief as to its value and expectation that it would settle, and have even identified the defendant in your filings as The End Records, Inc., The End has suffered no prejudice as a result of the error. I assume you will oppose the application, but if that is incorrect let me know. Also, will you be filing and exchanging your exhibit list and witness list tomorrow? Since you have not given us an exhibit list or a final witness list, there no longer is time to prepare joint *lists*.

Stephen D. Rothschild
King, Holmes, Paterno & Soriano LLP
1900 Avenue of the Stars, 25th Floor
Los Angeles, CA 90067
Telephone: 310-282-8986
Facsimile: 310-282-8903
Email: srothschild@khpslaw.com

**From:** Eric Bjorgum [mailto:eric.bjorgum@kb-ip.com]
**Sent:** Wednesday, July 04, 2018 2:02 PM
**To:** Stephen D. Rothschild
**Cc:** Christian Anstett
**Subject:** RE: Have you decided on your ex parte?

Yes. We are going to do it, but we will do it on Friday. You should seriously reconsider this case. You sued the wrong party, and even if it was an honest mistake, it looks like you did it to avoid federal jurisdiction because of how it was handled before. You should just cut your losses, take the 998 and give Glenn a discount. You are wasting money on fee that you won't get back.

-- Eric

**From:** Stephen D. Rothschild <SRothschild@khpslaw.com>
**Sent:** Wednesday, July 4, 2018 12:01 PM
**To:** Eric Bjorgum <eric.bjorgum@kb-ip.com>
**Subject:** Have you decided on your ex parte?

Stephen D. Rothschild
King, Holmes, Paterno & Soriano LLP
1900 Avenue of the Stars, 25th Floor
Los Angeles, CA 90067
Telephone: 310-282-8986
Facsimile: 310-282-8903
Email: srothschild@khpslaw.com

1

# Exhibit D

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 11/08/16 | | | | DEPT. 32 |
|---|---|---|---|---|
| HONORABLE JOANNE O'DONNELL | JUDGE | S. LUQUENO | | DEPUTY CLERK |
| HONORABLE #8 | JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR | | |
| N. AVALOS, C.A. | Deputy Sheriff | NONE | | Reporter |

| 8:30 am | BC626555 | Plaintiff | STEPHEN ROTHSCHILD (X) |
|---|---|---|---|
| | | Counsel | VIA COURTCALL |
| | GLENN DANZIG ET AL | | |
| | | Defendant | A. ERIC BJORGUM (X) |
| | VS | Counsel | VIA COURTCALL |
| | THE END RECORDS LLC | | |

**NATURE OF PROCEEDINGS:**

CONFERENCE-CASE MANAGEMENT

The Case Management Conference is held.

The Court sets the following dates:

The Final Status Conference is set for
September 14, 2017, at 8:30 a.m. in this department.

Jury Trial is set for September 26, 2017, at
8:30 a.m. in this department.  Estimated time for
trial is 5 days.

Notice is waived.

Page    1 of    1    DEPT. 32

MINUTES ENTERED
11/08/16
COUNTY CLERK

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 08/29/17 | **DEPT.** 32 |
| HONORABLE DANIEL S. MURPHY          JUDGE | S. LUQUENO          DEPUTY CLERK |
| HONORABLE          JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| N. AVALOS, C.A.          Deputy Sheriff | NONE          Reporter |

10:30 am   BC626555

GLENN DANZIG ET AL
VS
THE END RECORDS LLC

Plaintiff
Counsel
                    NO APPEARANCES
Defendant
Counsel

**NATURE OF PROCEEDINGS:**

COURT ORDER RE STIPULATION AND ORDER TO CONTINUE
TRIAL

Having reviewed the stipulation submitted, the Court
hereby grants the request and orders the following:

Final Status Conference currently set for
September 14, 2017 is continued to February 22, 2018,
at 8:30 a.m. in this department.

Jury Trial currently set for September 26, 2017 is
continued to March 6, 2018, at 8:30 a.m. in this
department.

All other dates and deadlines dependent on the date
of trial, including discovery and motion cutoffs,
shall be calculated based on the new trial date.

Plaintiff's counsel is ordered to give notice.

               CLERK'S CERTIFICATE OF MAILING

I, the below-named Executive Officer/Clerk of the
above-entitled court, do hereby certify that I am
not a party to the cause herein, and that on this
date I served the notice of entry of the above order
upon each party or counsel named below by placing
the document for collection and mailing so as to

08/31/2017

               Page   1 of   2   DEPT. 32

MINUTES ENTERED
08/29/17
**COUNTY CLERK**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 08/29/17 | | DEPT. 32 |
| HONORABLE DANIEL S. MURPHY          JUDGE | S. LUQUENO | DEPUTY CLERK |
| HONORABLE                   JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| N. AVALOS, C.A.    Deputy Sheriff | NONE | Reporter |

| 10:30 am | BC626555 | | |
|---|---|---|---|
| | | Plaintiff Counsel | |
| | GLENN DANZIG ET AL | | NO APPEARANCES |
| | VS | Defendant | |
| | THE END RECORDS LLC | Counsel | |

**NATURE OF PROCEEDINGS:**

cause it to be deposited in the United States mail
at the courthouse in Los Angeles,
California, one copy of the original filed/entered
herein in a separate sealed envelope to each address
as shown below with the postage thereon fully prepaid,
in accordance with standard court practices.


Dated:  August 29, 2017

Sherri R. Carter, Executive Officer/Clerk


By: _____
           S. Luqueno, Deputy Clerk



Howard E. King, Esq.
King, Holmes, Paterno & Soriano, LLP
1900 Avenue of the Stars, 25th Floor
Los Angeles, Ca. 90067

08/31/2017

MINUTES ENTERED
08/29/17
COUNTY CLERK

1  KING, HOLMES, PATERNO & SORIANO, LLP
   HOWARD E. KING, ESQ., STATE BAR NO. 77012
2  STEPHEN D. ROTHSCHILD, ESQ., STATE BAR NO. 132514
   SROTHSCHILD@KHPSLAW.COM
3  1900 AVENUE OF THE STARS, 25TH FLOOR
   LOS ANGELES, CALIFORNIA 90067-4506
4  TELEPHONE:   (310) 282-8989
   FACSIMILE:    (310) 282-8903
5
   Attorneys for Plaintiffs GLENN DANZIG and
6  EVILIVE MUSIC, LLC, a California limited
   liability company
7

FILED
Superior Court of California
County of Los Angeles

FEB 05 2018

Sherri R. Carter, Executive Officer/Clerk
By_____ Deputy
          Inna R. Doty

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9               FOR THE COUNTY OF LOS ANGELES - CENTRAL DISTRICT

10

11  GLENN DANZIG, an individual; and          CASE NO. BC626555
    EVILIVE MUSIC, LLC, a California limited   Hon. Daniel S. Murphy, Dept. 32
12  liability company,

                                              [Proposed] ORDER
13              Plaintiff,
                                              Date:    February 5, 2018
14      vs.                                   Time:    8:30 a.m.
                                              Dept.:   32
15  THE END RECORDS, LLC, a California
    limited liability company; and DOES 1
16  through 10, inclusive,

17              Defendant.
                                              Action Filed:   July 8, 2016
18                                            Trial Date:     March 6, 2018

19          On February 5, 2018, the Court heard the *ex parte* application of plaintiffs Glenn Danzig

20  and Evilive Music, LLC (collectively, "plaintiffs") to continue trial herein pursuant to CRC Rule

21  3-1332(c)(7).

22          Stephen D. Rothschild of King, Holmes Paterno & Soriano, LLC appeared on behalf of

23  plaintiffs.

24          A. Eric Bjorgum, Esq. appeared on behalf of defendant The End Records,

25  LLC.

26          Good cause appearing therefor, the application is hereby granted.  The final status

27  conference in the above-entitled matter is continued to ___4/4/5___, 2018 at 8:3 a.m.,

28  and the trial is continued to ___4/17___, 2018 at 8:30 a.m.  All other dates and

[Proposed] ORDER

1    deadlines dependent on the date of trial, including discovery and motion cutoffs, shall be

2    calculated based on the new trial date.

3        IT IS SO ORDERED.

4    Dated: _____2 / 8_____, 2018

 

5                        Hon. Daniel S. Murphy
                         Judge of the Superior Court

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 02/05/18 | | **DEPT.** 32 |
| HONORABLE Daniel S. Murphy   JUDGE | I.R. DOTY | DEPUTY CLERK |
| HONORABLE   JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| #15   N. AVALOS/ctrm asst   Deputy Sheriff | NONE | Reporter |

| | | | |
|---|---|---|---|
| 8:30 am | BC626555<br>GLENN DANZIG, ET AL | Plaintiff<br>Counsel | STEPHEN D. ROTHSCHILD (x) |
| | VS. | Defendant<br>Counsel | A. ERIC BJORGUM (x) |
| | THE END RECORDS LLC | | |

**NATURE OF PROCEEDINGS:**

PLAINTIFF'S EX PARTE APPLICATION TO CONTINUE THE
3/06/18 TRIAL;


Plaintiff's Ex Parte Application comes on for hearing
and is argued.

As a result the court GRANTS the Application.

The 2/22/18 Final Status Conference is therefore con-
tinued to Apr. 5, 2018 at 8:30 a.m. in Dept. 32.

The 3/06/18 Jury Trial is continued to Apr. 17, 2018
at 8:30 a.m. in Dept. 32.

Order granting plaintiffs' Ex Parte Application is
signed and filed this date.

Notice is waived.

Page   1 of  1    DEPT. 32

| |
|---|
| **MINUTES ENTERED**<br>02/05/18<br>**COUNTY CLERK** |

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 04/05/18 | | | | DEPT. 32 |
|---|---|---|---|---|
| HONORABLE DANIEL S. MURPHY | JUDGE | S. LUQUENO | | DEPUTY CLERK |
| HONORABLE #7 | JUDGE PRO TEM | | | ELECTRONIC RECORDING MONITOR |
| N. AVALOS, C.A. | Deputy Sheriff | NONE | | Reporter |

| 8:30 am | BC626555 | | Plaintiff Counsel | STEPHEN D. ROTHSCHILD (X) |
|---|---|---|---|---|
| | GLENN DANZIG ET AL | | Defendant Counsel | A. ERIC BJORMAN (X) |
| | VS THE END RECORDS LLC | | | |

**NATURE OF PROCEEDINGS:**

FINAL STATUS CONFERENCE

The matter is called for hearing.

Counsel represent to the Court that they are not ready for trial and request a continuance.

The Court continues the Final Status Conference to June 28, 2018, at 8:30 a.m. in this department.

Jury Trial currently set for April 17, 2018 is continued to July 10, 2018, at 8:30 a.m. in this department.

Notice is waived.

Page    1 of   1    DEPT. 32

MINUTES ENTERED
04/05/18
COUNTY CLERK

1   KING, HOLMES, PATERNO & SORIANO, LLP
    HOWARD E. KING, ESQ., STATE BAR NO. 77012
2   STEPHEN D. ROTHSCHILD, ESQ., STATE BAR NO. 132514
    SROTHSCHILD@KHPSLAW.COM
3   1900 AVENUE OF THE STARS, 25TH FLOOR
    LOS ANGELES, CALIFORNIA 90067-4506
4   TELEPHONE:   (310) 282-8989
    FACSIMILE:   (310) 282-8903
5
    Attorneys for Plaintiffs GLENN DANZIG and
6   EVILIVE MUSIC, LLC

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9             FOR THE COUNTY OF LOS ANGELES - CENTRAL DISTRICT

10

11  GLENN DANZIG, an individual; and          CASE NO. BC626555
    EVILIVE MUSIC, LLC, a California limited   Hon. Daniel S. Murphy, Dept. 32
12  liability company,
                                              [Proposed] ORDER RE STIPULATION
13                    Plaintiff,              TO PARTICIPATE IN PRE-MOTION
                                              DISCOVERY CONFERENCE
14      vs.

15  THE END RECORDS, LLC, a California
    limited liability company; and DOES 1
16  through 10, inclusive,
                                              Action Filed:   July 8, 2016
17                    Defendant.              Trial Date:     April 17, 2018

18

19      The Court, having reviewed the April 27, 2018, stipulation of plaintiffs Evilive Music,

20  LLC and Glenn Danzig (collectively, "plaintiffs") and defendant The End Records, LLC

21  ("defendant") to participate in an informal pre-motion discovery conference before the Court with

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

3421.064/1304652.1
[Proposed] ORDER RE STIPULATION TO PARTICIPATE IN PRE-MOTION DISCOVERY CONFERENCE

---

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAY 07 2018

Sherri R. Carter, Executive Officer/Clerk
By: Shantal Luqueño, Deputy

1   respect to defendant's responses to plaintiffs' first set of requests for production, and good cause

2   appearing therefor,

3         IT IS HEREBY ORDERED THAT the pre-motion discovery conference be set for 6/4/18

4   at 8:30 A.M. , 2018 in Department 32 of the above-entitled Court.

5   Plaintiff to give notice.

6

7   DATED:  MAY 07 2018 , 2018

8                                          DANIEL S. MURPHY
                                           Honorable Daniel S. Murphy
                                           Judge of the Superior Court

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KING, HOLMES,
PATERNO &
SORIANO, LLP

3421.064/1304652.1                              2

[Proposed] ORDER RE STIPULATION TO PARTICIPATE IN PRE-MOTION DISCOVERY CONFERENCE

1                             **PROOF OF SERVICE**

2 **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3        At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 1900 Avenue
4 of the Stars, Twenty-Fifth Floor, Los Angeles, CA 90067-4506.

5        On May 1, 2018, I served true copies of the following document(s) described as **[PROPOSED] ORDER RE STIPULATION TO PARTICIPATE IN PRE-MOTION**
6 **DISCOVERY CONFERENCE** on the interested parties in this action as follows:

7       Eric Bjorgum, Esq.                 Attorneys for Defendant
      Marc Karish, Esq.                 The End Records, Inc.
8       Karish & Bjorgum, PC
      119 E. Union Street, Suite B
9       Pasadena, CA 91103
      Telephone: (213) 785-8070
10       Facsimile: (213) 995-5010
      Email: eric.bjorgum@kb-ip.com
11       Email: marc.karish@kb-ip.com

12        **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and
13 mailing, following our ordinary business practices. I am readily familiar with King, Holmes, Paterno & Soriano, LLP's practice for collecting and processing correspondence for mailing. On
14 the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with
15 postage fully prepaid.

16        **BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address bsalgado@khpslaw.com to the persons at the e-mail
17 addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.
18

19        I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

20        Executed on May 1, 2018, at Los Angeles, California.

21

22                                  _Brendaly Salgado_
                                 Brendaly Salgado
23

24

25

26

27

28

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/04/18

DEPT. 32

HONORABLE DANIEL S. MURPHY   JUDGE | S. LUQUENO   DEPUTY CLERK

HONORABLE   JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR
#1

N. AVALOS, C.A.   Deputy Sheriff | NONE   Reporter

8:30 am | BC626555

GLENN DANZIG ET AL
VS
THE END RECORDS LLC

Plaintiff
Counsel   STEPHEN D. ROTHSCHILD  (X)

Defendant
Counsel   A. ERIC BJORGUM  (X)

**NATURE OF PROCEEDINGS:**

CONFERENCE-INFORMAL DISCOVERY

The Informal Discovery Conference is held in
chambers.

Counsel for defendant agrees to produce documents
by June 8, 2018.

Page   1 of   1   DEPT. 32

MINUTES ENTERED
06/04/18
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 06/28/18 | DEPT. 32 |
| HONORABLE DANIEL S. MURPHY   JUDGE | S. LUQUENO   DEPUTY CLERK |
| HONORABLE #2   JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| N. AVALOS, C.A.   Deputy Sheriff | NONE   Reporter |

| | | | |
|---|---|---|---|
| 8:37 am | BC626555 | Plaintiff Counsel | STEPHEN D. ROTHSCHILD (X) |
| | GLENN DANZIG ET AL VS THE END RECORDS LLC | Defendant Counsel | A. ERIC BJORGUM (X) |

**NATURE OF PROCEEDINGS:**

FINAL STATUS CONFERENCE

The matter is called for hearing.

Plaintiff's counsel represents to the Court that trial documents have been filed.  Counsel for defendant has not filed trial documents and requests permission for his client to appear by video conference for the trial.

The Court finds good cause that defendant is unavailable for trial and may appear by video conference.

The Court is ordering all trial documents and oppositions to the Motions in Limine to be filed by July 5, 2018.

Court Trial remains set for July 10, 2018, at 8:30 a.m. in this department.

07/03/2018

Page   1 of   1   DEPT. 32

MINUTES ENTERED
06/28/18
COUNTY CLERK

# Exhibit E

KING, HOLMES, PATERNO & SORIANO, LLP
HOWARD E. KING, ESQ., STATE BAR NO. 77012
STEPHEN D. ROTHSCHILD, ESQ., STATE BAR NO. 132514
SROTHSCHILD@KHPSLAW.COM
1900 AVENUE OF THE STARS, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90067-4506
TELEPHONE:    (310) 282-8989
FACSIMILE:    (310) 282-8903

Attorneys for Plaintiffs GLENN DANZIG and
EVILIVE MUSIC, LLC

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES - CENTRAL DISTRICT

| | |
|---|---|
| GLENN DANZIG, an individual; and EVILIVE MUSIC, LLC, a California limited liability company, <br><br> Plaintiffs, <br><br> vs. <br><br> THE END RECORDS, LLC, a California limited liability company; and DOES 1 through 10, inclusive, <br><br> Defendant. | CASE NO. BC626555 <br> Hon. Daniel S. Murphy, Dept. 32 <br><br> **PLAINTIFFS' TRIAL BRIEF** <br><br> Judge:   Hon. Daniel S. Murphy <br> Date:    July 10, 2018 <br> Time:    8:30 a.m. <br> Dept.:   32 <br><br><br> Action Filed:   July 8, 2016 <br> Trial Date:     July 10, 2018 |

Plaintiffs Glenn Danzig ("Danzig") and Evilive Music, LLC ("Evilive) (collectively, "plaintiffs") respectfully submit the following trial brief.

## I.   INTRODUCTION

The instant action primarily is a music industry accounting case.  Danzig is an internationally acclaimed recording artist in the punk rock, heavy metal, and classical music genres, among others.  Evilive is a record label that Danzig owns and through which he releases music.  Effective March 15, 2010, Evilive entered into a distribution agreement (the "Agreement") with defendant The End Records, LLC ("The End"), an independent music distribution company.  (Distributors distribute digital and physical copies of recordings on behalf of artists and record labels to retailers, such as Amazon.com, iTunes and brick-and-mortar record stores.)  The End in

1 turn was party to a distribution agreement with a major distributor, non-party RED Distribution,

2 LLC ("RED"), which now is part of Sony Music Entertainment. RED was The End's distributor,

3 through which The End distributed Evilive product, until shortly before the end of the

4 Agreement's five-year term.

5 The End engaged in several sharp practices that resulted in hundreds of thousands of

6 dollars in underpayments to Evilive and Danzig. They included failing to report sales; selling

7 goods at substantially less than agreed; overcharging Evilive for promotional, advertising, and

8 other costs; incurring expenses without plaintiff's authorization as required under the Agreements;

9 failing to pay plaintiffs tens of thousands of dollars that The End does not dispute are due; and

10 failing to return product that The End received from plaintiff's prior distributor and did not sell.

11 After plaintiffs questioned the accuracy of The End's accountings, including in prior

12 litigation, The End agreed to conduct a joint audit. Plaintiffs dismissed the prior litigation and the

13 parties entered into a tolling agreement. However, The End reneged on its agreement to conduct

14 the joint audit. During the pendency of the instant action, The End again agreed several times to

15 participate and cooperate in a joint audit, and then failed and refused to do so.

16 Plaintiffs then proceeded with an audit without The End's cooperation. The auditor, Cedar

17 Boschan ("Boschan") of Boschan Corp., analyzed the accountings that The End provided when

18 the Agreement was in effect, the few other documents The End produced in the litigation, and

19 extensive records that RED produced pursuant to subpoena. Boschan uncovered more than

20 $400,000 in underpayments, overcharges for purported costs, unreported sales, and other

21 improprieties.

22 During discovery, it became apparent that, between the time that this dispute arose in 2012

23 and when The End responded to plaintiffs' discovery, The End had discarded most of its business

24 records relating to plaintiffs. For example, The End claimed to have "lost" virtually all of its

25 receipts, invoices, purchase orders, inventory reports, sales reports, and other documentation.

26 Therefore, any self-serving testimony The End may attempt to introduce to justify its financial

27 transgressions must be viewed as not credible and disregarded. (See CACI 204, Willful

28 Suppression of Evidence, "[y]ou may consider whether one party intentionally concealed or

1  destroyed evidence.  If you decide that a party did so, you may decide that the evidence would

2  have been unfavorable to that party;" CACI 203, Party Having Power to Produce Better Evidence

3  ("[y]ou may consider the ability of each party to provide evidence.  If a party provided weaker

4  evidence when it could have provided stronger evidence, you may distrust the weaker evidence.")

5  **II.     STATEMENT OF FACTS**

6       **A.     Chronology**

7
| Date | Event |
|------|-------|
| March 15, 2010 | Effective Date of Evilive/The End Distribution Agreement |
| July 24, 2012 | Plaintiffs issue written notice of breach for failing to account, underpricing product, selling product outside the permitted territory |
| March 4, 2013 | Plaintiffs gives The End notice of its intent to audit The End's books and records |
| January 24, 2014 | Plaintiffs file *Glenn Danzig, et al. v. The End Records, LLC*, Los Angeles Superior Court Case No. BC 534235 (the "First Action") |
| February 27, 2014 | The End removes the First Action to the United States District Court for the Central District of California |
| April 9, 2014 | Based on The End's agreement to conduct a joint audit, plaintiffs dismiss the First Action without prejudice and the parties enter into an agreement tolling the statute of limitations on all disputes between them as of January 24, 2014 |
| July 8, 2016 | Plaintiffs file the instant action after fruitless efforts to obtain The End's cooperation to conduct audit |
| August 29, 2017 | Parties stipulate that they "have agreed jointly to retain an auditor to examine defendant's books and records and to report his findings to the Parties," and Court continues trial herein based on that stipulation, to allow time to complete audit. |
| Fall 2017 | The End fails to cooperate to set up audit |
| January 21, 2018 | The End re-commits to participate and cooperate in audit |
| Spring 2018 | The End again reneges on agreement to participate in joint audit.  When plaintiffs retain auditor The End fails to cooperate and claims that it no longer has relevant documents. |

## B.  Relevant Terms of the Agreement

A copy of the Agreement is attached hereto as Exhibit A.  The Agreement was for a five-year term.  (Ex. A, ¶ 1.)  The territory in which The End had the right to distribute plaintiffs' products was limited to North America and Canada.  (*Id.*, ¶ 2.)  "Product" subject to the Agreement was defined as a list of titles attached to the Agreement.  (*Id.*, ¶ 3(a)(ii).)  However, The End actually did not distribute all of the titles on the list and distributed additional titles that were not on the list.  The Agreement provided that The End would distribute plaintiffs' products through RED.  (*Id.*, ¶ 3(b)(i)(A).)

Paragraphs 5(a) and (b) of the Agreement, *Sales and Marketing*, required The End to obtain plaintiffs' authorization and approval to incur third party marketing expenses before charging such expenses to plaintiffs.  Paragraph 5(c) required The End to determine product pricing in consultation with plaintiffs and, in no event, to charge less than its standard prices for plaintiffs' titles.  Paragraph 7 of the agreement provided deadlines for auditing and objecting to statements, which are not at issue in this case, due to plaintiffs' notice of breach to The End on July 24, 2012 and audit demand on March 4, 2013, and due to The End's repeatedly reneging on its agreements to cooperate with an audit.  Paragraph 11 permitted The End to hold a reserve of monies due plaintiffs to pay for returned merchandise, until, at the latest, six months after the end of the five-year term, or until September 2015.

## III.  AMOUNTS DUE FROM THE END TO PLAINTIFFS

The evidence at trial, including RED's statements to The End and other records from RED, The End's statements to plaintiffs and other records from The End, and the auditor's analysis of those documents, will establish that the following amounts, plus interest, are due and owing from The End to plaintiffs.  Plaintiffs' auditors' analysis and examination may result in the discovery of additional amounts due, which also will be presented at trial.

| Amount | Explanation |
|---|---|
| $23,349 | The End admits that amount is due, including unpaid reserves |
| $120,000 + | Cost of and lost profits from inventory from plaintiffs' prior distributor |

| | |
|---|---|
| | which The End failed to return to plaintiffs and as to which The End failed to report any sales |
| $150,000 + | Lost revenues due to underpricing products without consulting with plaintiffs or obtaining plaintiffs' consent |
| $125,000 + | Improper charges to plaintiffs for promotional expenses, advertising, and other costs not attributable to plaintiffs' products |
| $25,000 + | Sales revenues due plaintiffs reflected on RED statements and The End records that were not reported or paid to plaintiffs |
| **$443,349 +** | **Total Damages**, not including interest at the legal rate from the dates said sums came due and additional sums subject to proof at trial |

## IV.   DISCOVERY ISSUES

At a June 4, 2018, discovery conference, this Court ordered The End to provide verified further responses to plaintiffs' first set of requests for production confirming that it had complied with the Code of Civil Procedure's requirements that it conduct a good faith search and investigation and had produced all documents responsive to the requests, and to produce any such documents that it had not previously produced.  The End did so.  The parties then met and conferred on potential a *motion in limine* to exclude The End from introducing documentary evidence that it did not produce in response to the requests for production as ordered on June 4,

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1   2018.  On June 20, 2018, The End's counsel confirmed in writing that The End will not introduce

2   at trial any documentary evidence that it did not produce as of its further responses.  (Exhibit B

3   hereto.)

4   DATED:        June 27, 2018            KING, HOLMES, PATERNO & SORIANO, LLP

5

6                                          By:  _____

7                                               HOWARD E. KING
                                                STEPHEN D. ROTHSCHILD
8                                          Attorneys for Plaintiffs GLENN DANZIG and
                                           EVILIVE MUSIC, LLC
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>PROOF OF SERVICE</u>

2 **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3         At the time of service, I was over 18 years of age and **not a party to this action**.  I am
employed in the County of Los Angeles, State of California.  My business address is 1900 Avenue
4 of the Stars, Twenty-Fifth Floor, Los Angeles, CA 90067-4506.

5         On July 5, 2018, I served true copies of the following document(s) described as
**PLAINTIFFS' TRIAL BRIEF** on the interested parties in this action as follows:
6

7         Eric Bjorgum, Esq.                                    Attorneys for Defendant
          Marc Karish, Esq.                                    The End Records, Inc.
          Karish & Bjorgum, PC
8         119 E. Union Street, Suite B
          Pasadena, CA 91103
9         Telephone: (213) 785-8070
          Facsimile: (213) 995-5010
10        Email: eric.bjorgum@kb-ip.com
          Email: marc.karish@kb-ip.com
11

12        **BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the
persons at the addresses listed in the Service List and placed the envelope for collection and
mailing, following our ordinary business practices.  I am readily familiar with King, Holmes,
13 Paterno & Soriano, LLP's practice for collecting and processing correspondence for mailing.  On
the same day that the correspondence is placed for collection and mailing, it is deposited in the
14 ordinary course of business with the United States Postal Service, in a sealed envelope with
postage fully prepaid.
15

16        **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the
document(s) to be sent from e-mail address mzuffi@khpslaw.com to the persons at the e-mail
addresses listed in the Service List.  I did not receive, within a reasonable time after the
17 transmission, any electronic message or other indication that the transmission was unsuccessful.

18        I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.
19

20        Executed on July 5, 2018, at Los Angeles, California.

21

22                                                         Melissa Zuffi

23

24

25

26

27

28

# Exhibit A

This agreement made effective of March 15, 2010, between The End Records , Inc. 94 Bogart Street, Brooklyn, NY 11206 (sometimes referred to as "The End" and sometimes as "we") on the one hand, Evilive Music LLC, c/o David Weise & Associates, 16000 Ventura Blvd., Suite 600, Encino, CA 91436 Attn: David Weise (sometimes referred to as "Label" and sometimes as "you"). For good and valuable consideration, the parties hereby agree as follows:

1.      *Term.*  The later of five (5) years from the date hereof and the last day of the calendar month in which the Advance in fully-recouped; provided that, at time after the expiration of the five (5) year period, Label may pay repay the unrecouped balance and the Term shall terminate as of the end of the calendar month following the date of such repayment.

2.      *Territory.*  U.S. (including all territories, possessions and military bases) and Canada.

3.      *Distribution Rights.*

        (a)      (i)      .Label irrevocably grant(s) to The End, for the Term and in the Territory, the exclusive right, under copyright and otherwise, to be the sole and exclusive distributor of all Product (as such term is defined herein below) on Records, in any and all media, whether now known or hereafter developed, including, without limitation, sales through normal and alternative retail channels, book stores and book distributors, telephone, retail music and video chains, · wholesale clubs, one-stops and rack jobbers, and to consumers via satellite, point-of-sale manufacturing, or any other means of direct digital and/or non-digital transmission or other forms of Records now known or hereafter devised. The rights granted to The End hereunder include the right to publicly perform and to authorize the public performance of Recordings and Records hereunder, and the right to fully publicize, exploit and advertise all rights granted to The End hereunder.  Notwithstanding the foregoing, Label shall have prior written approval over the non-physical exploitation of the Catalogue (defined below); provided that The End may publicly perform the Catalogue in any and all media.

        (ii)      For purposes of this Agreement, the terms (A) "Product" shall mean (I) the thirteen (13) catalogue titles set forth on Schedule A attached hereto and made a part hereof (the "Catalogue"), (II) the upcoming studio Album (the "Studio Album") embodying the performances of the artist p/k/a "Glenn Danzig" ("Artist") and (III) all other titles that Label or Danzig obtains ownership or control over during the Term and desires to have distributed by The End and; (B) "Recordings" shall mean every recording of sound, whether or not coupled with a visual image, by any method and on any substance or material, or in any other form or format, whether now or hereafter known, which is used or useful in the recording, production, manufacture, distribution and/or transmission of Records or for any other commercial exploitation; (C) "Records" shall mean all forms of reproductions, transmissions or communications of Recordings now or hereafter known, manufactured, distributed, transmitted or communicated  primarily for home use, school use, jukebox use or use in means of transportation, including, without limitation, Records embodying or reproducing sound alone and audiovisual Records; (D) "Studio Album" shall mean one (1) or more audio-only Records, at least thirty-five (35) minutes in playing time, and embodying at least eight (8) Recordings of different Compositions sold in a single package; and (E) "Affiliates" means persons or entities owning, controlling, owned by, controlled by or under common control with Label or any of them.

        (iii)      The End shall have the rights to use the names and likeness of the artists whose performances are contained on the Products and biographical material concerning them

for the purposes of advertising and promoting the Products or merchandise hereunder, and Label hereby grants The End such rights.

(b) (i) (A) The End shall distribute Records in the Territory by soliciting orders and fulfilling such orders. You and The End acknowledge that as of the date hereof, RED is The End's distributor in the Territory.

(B) Label grants to The End the right during the Term to exploit merchandise in accordance with the terms set forth in paragraph 12 below.

(ii) The End shall process customer returns of Records in accordance with its and its distributor's (currently RED) customary policies and practices. (See Exhibit A for current charges). In The End's discretion, The End shall perform refurbishing services (i.e., re-shrink wrapping) for Label's Records that are returned to The End with breached (e.g., torn or stickered) shrink wrap at the applicable per unit charges set forth in Exhibit A. The End shall scrap any returned Records that require reconditioning beyond shrink-wrap repair. The End shall, in The End's discretion, either (A) charge Label's account hereunder in an amount equal to such refurbishing or scrapping charges (as applicable), or (B) bill Label for such charges and Label shall remit payment within thirty (30) days of the date of each billing. Following the termination or expiration of the Term, The End shall not be obligated to accept or process returns and such returns shall be Label's responsibility. Label shall cause its next distributor of Records to accept from customers all returns of Records hereunder and issue full credit to such customers.

(iii) With regard to excess inventory which is not defective or otherwise scrapped in accordance with paragraph 3(b)(ii) above, The End may notify Label that The End does not wish to hold such excess inventory and Label shall have thirty (30) days to elect whether (A) to pick up such inventory at its own shipping expense or (B) instruct The End to destroy such inventory, the expense of which shall be borne by Label. Should Label fail to respond, The End shall have the right, in its sole discretion, to scrap and/or hold such excess inventory and shall either (i) charge Label's account hereunder in an amount equal to the charges associated therewith (as applicable) or (ii) bill Label for such charges and Label shall remit payment within thirty (30) days of the date of each billing.

(iv) The End shall obtain Label's prior written approval with respect discounts for sales, free goods and promotional programs applicable to Product hereunder and implemented by The End's distributor.

4.   *Manufacturing*.
(a) The End shall, on the Label's behalf, cause the manufacture of those quantities of Records that it deems necessary to fulfill all existing and anticipated orders therefor.

(b) Label shall be charged for the actual manufacturing costs that The End incurs in connection with the distribution of Product on a so-called "pass through" basis (including without limitation, costs relating to pre-production [e.g., pre-press, proofs, match prints], production [e.g., disc checks], and freight) (collectively, "Manufacturing Costs"), as well as any mechanical royalties which The End may be obligated to pay in connection with Product hereunder.

(c) Any Manufacturing Costs incurred by The End shall be deducted from Net Proceeds which have accrued as of The End of the statement period in which The End places

the order for such manufacturing and, to the extent necessary, from Net Proceeds thereafter accruing. Notwithstanding the foregoing, if, in The End's determination, accrued Net Proceeds (calculated after deduction of all amounts deductible therefrom other than manufacturing costs) are insufficient to offset Manufacturing Costs, then Label shall be required to prepay any such Manufacturing Costs.

(d)      All Products manufactured by The End shall have Label's logo and company information, and The End shall not alter or edit the existing layouts of any Products except to add a barcode. Label agrees that The End may place the text "Manufactured and distributed by The End/RED Distribution" on all Products manufactured by The End, the placement and/or design of which shall be approved or submitted by Label.

(e)      Upon the expiration of the Term, in the event of a non-renewal, The End shall have the non-exclusive rights to continue to sell-off any Products manufactured under this agreement  and any Bundles (defined in paragraph 12(a) below) for an additional period of six (6) months (the "Sell-Off Period"). Following the expiration of the Sell-Off Period, at Label's election Label shall either (i) pick up any remaining Products at Label's shipping expense or (ii) instruct The End to destroy such inventory, the expense of which shall be borne by Label.

(f)      For each release Label shall deliver to The End the following at Label's expense: one (1) production master (CDR or .wav files); one (1) listening copy; complete artwork and layout files necessary for the production of the physical release; complete label copy information including ISRC codes, publishing information, and composer/lyricist credits; an Artist biography; an Artist and Label logo; and promotional, high-resolution photographs of Artist ("Delivery"). Such materials shall be Delivered to The End at least ten (10) weeks prior to the anticipated street date in the Territory of such release.

(g)      The End shall at its own cost and expense maintain adequate insurance on all inventory (whether domestically manufactured or imported) against any damage or loss (including but not limited to fire, flood or theft) while in The End's warehouse or in The End's distributor's warehouse during the Term.  Any claim made shall be limited to the actual cost of manufacturing, but neither The End nor its distributor shall be liable for consequential loss or loss of profit.  Label shall, at its own cost and expense, maintain a liability (errors and omissions) insurance policy naming The End as an additional insured covering claims arising in connection with The End's distribution or exploitation of Products hereunder.

5.      *Sales and Marketing*.
(a)      The End shall utilize its in-house staff to provide sales and marketing functions with respect to the Products released hereunder; provided that any third party marketing, promotion or publicity costs and expenses incurred by The End with Label's approval shall be deducted from Net Proceeds or promptly reimbursed to The End if Net Proceeds are insufficient to repay such expenses.

(b)      The End shall place so-called "co-op" advertisements with respect to Label's Products, subject to Label's approval. Label shall be solely responsible for the costs of all advertising with respect to Label's Products including such "co-op" advertising and such advertising costs shall be charged to Label on the statement in the same month it is credited to The End's customer. Label shall either reimburse The End therefor, or (at The End's election) The End may deduct such sums from other payments hereunder.  The End shall have the right of reasonable approval over any advertising in excess of The End's plans or which The End otherwise feels would create unreasonable financial exposure for Label or The End.

(c)     The End shall determine the selling price of the Products to customers in consultation with Label, provided that the selling price of each of the Products shall be reasonably consistent with The End's standard selling prices in similar price categories. The End shall consult with Label to select the release dates for Products hereunder.

6.     _Proceeds._
(a)     Net Proceeds (i.e., Net Sales plus liquidated reserves, if any, less the applicable Distribution Fee set forth below, any "co-op" advertising, marketing, promotion or publicity costs, manufacturing costs, freight and shipping costs to deliver Products to third parties, and any other costs and expenses incurred by The End in accordance with the terms hereof) shall be paid to Label monthly, within forty-five (45) days after The End receives payment from its distributor.

7.     _Accountings._
(a)     Any statements rendered by The End to Label shall be binding upon Label and not subject to any objection by Label for any reason unless specific objection in writing, stating the basis thereof, is given to The End within two (2) years from the date rendered. Failure to make specific objection within said time period shall be deemed approval of such statement.

(b)     Label shall have the right at Label's own expense to examine The End's books and records as the same pertain to sales under this agreement. Label may make such an examination for a particular statement only once and only once per statement, and only within two (2) years after the statement is rendered.  Such examination shall be conducted during The End's usual business hours, and at the regular place of business where The End keeps the books and records to be examined.  Such examination shall be conducted by an independent certified public accountant.  Label shall not have the right to bring an action against The End in connection with any accountings or payments hereunder unless Label commences the suit within three (3) years from the date such statement was rendered.

8.     _Advance._  In consideration of the rights granted herein, The End shall pay to Label the following recoupable, non-returnable advances: (a) One Hundred Twenty-Five Thousand US Dollars (US $125,000) payable (i) fifty percent (50%) following the execution of this agreement and (ii) the balance following Delivery of the Studio Album; and (b) One Hundred Twenty-Five Thousand US Dollars (US $125,000) payable (i)  fifty percent (50%) following the execution of this agreement and (ii) the balance in pro-rata shares in the amount of Four Thousand Eight Hundred and Eight Dollars (i.e., $4,808.00) promptly following the Delivery of each particular Catalogue title. For purposes of clarification, the Advance shall not be payable until this agreement is executed.

9.     _Distribution Fee/Service Fees/Expenses._  For sales through normal distribution channels (excluding digital and mobile sales), The End shall charge and retain for itself a Distribution Fee of twenty five percent (25%) of Net Sales (i.e., gross sales net of discounts, actual returns and credits).  For digital sales (excluding mobile sales) in respect of the Studio Album, the Distribution Fee shall be twenty-one percent (21%) of Net Digital Sales (i.e., gross digital sales net of discounts and credits) and in respect of the Catalogue, nineteen percent (19%) of Digital Net Sales. For mobile sales, the Distribution Fee shall be twenty-three percent (23%) of Net Mobile Sales (i.e., gross mobile sales net of discounts and credits).  For direct sales (i.e., mailorder, webstore, wholesale and direct to consumer sales), the Distribution Fee shall be twenty percent (20%) of Net Sales in lieu of twenty-five percent (25%). For any expenses The End incurs at the request of Label or in connection with its distribution hereunder, The End shall

charge Label (and/or deduct from Net Proceeds hereunder) such fees as The End pays or incurs for such services or materials on a "pass-through" basis.

10.     _Third Party Licensing._  All rights are retained by Licensor; provided that If The End or its distributor demonstrably secures a third party licensing opportunity (e.g., synchronization placement), each such usage of which shall require Label's prior approval, The End will deduct a fee of twenty-five percent (25%) of Net Receipts (i.e., gross licensing receipts less any out-of-pocket costs incurred by The End and third party fees) and shall credit fifty percent (50%) of the balance to Evilive's account and shall pay the remaining fifty percent (50%) to Evilive directly at the time the next accounting is rendered.

11.     _Reserves._  The End shall hold a reserve against returns of twenty-five percent (25%) of Net Sales accruing during each such month; provided, however, if in any month returns exceed twenty-five percent (25%), The End may increase reserves to the actual return rate.  Any reserves held shall be liquidated in three (3) calendar quarters after the month in which such reserves are initially established.  Notwithstanding the foregoing, upon the end of the Term, liquidation of reserves shall be suspended for six (6) months in order that they may be used as a potential offset against post-Term returns.

12.     _Merchandise._
        (a)      Label represents and warrants that Artist is subject to an exclusive merchandise agreement with Bravado (the "Bravado Agreement"). Notwithstanding the foregoing, Label shall use reasonable efforts to assist The End in (i) purchasing merchandise from Bravado at a low price and/or (ii) having Bravado grant an exclusivity waiver with respect to merchandise designs, solely for use in connection with the sale of bundled packages (e.g., a Record sold together with a merchandise item at a special price) ("Bundles").

        (b)      Following the expiration or other termination of the term of the Bravado Agreement, Label shall deliver (or request that The End create at Label's expense) up to two (2) exclusive merchandise designs relating to Artist. The End shall have the right, to use the Label's and Artist's name, approved logo and approved likeness and in connection with the sale, licensing and exploitation of merchandise (including, but not limited to, T-shirts, longsleeves, hoodies, jackets, hats, patches, buttons and posters) that The End may use for promotional purposes and sell solely in connection with Bundles.

        (c)      The End shall pay Label fifty percent (50%) of Net Profits in connection with the merchandise component of a Bundle. Net Profits shall be defined as The End's gross profits for the merchandise component minus The End's documented, out-of-pocket expenses incurred in connection with such merchandise. In connection with The End's mailorder sales or direct sales to consumers, the actual selling price shall be defined as the selling price less Two Dollars ($2.00) per merchandise item to cover shipping costs.  For sales of Bundles, such sale shall be accounted to Label as if the Record was sold at a standard full price, and the merchandise shall be accounted as if it was sold at a wholesale price.  By way of example only, if a CD and t-shirt bundle retails for $22 and the CD normally retails for $12, the CD shall be accounted for as a sale of a Product hereunder, and the t-shirt shall be accounted for as if it had been sold for $8, taking into consideration the $2 shipping deduction for mailorder sales, and Label shall be entitled to fifty percent (50%) of Net Profits based on the $8 retail price.

13.  *Warranties and Representations*:
     (a)  Label hereby warrants and represents to The End that:

          (i)  The Materials embodied on the Products and the packaging therefor and the merchandise will not violate any law or infringe upon the rights of any party.  As used herein "Material" shall mean and include, without limitation, all musical compositions, all performances, and dramatic, artistic, musical and literary material embodied on Recordings and Products and the names, biographical materials and likeness, ideals and intellectual properties, and all other materials contained on the packaging thereof and advertising therefor, and the trademarks and logos used in connection therewith.

          (ii)  No agreement of any kind heretofore or hereafter entered into by Label or its principals, officers, shareholders, directors, representatives, agents or other parties deriving rights from Label, will interfere in any manner with the complete performance of this agreement.

          (iii)  Label possesses all right and power to enter into and fully perform this agreement and has obtained all clearances, permissions and other licenses required for The End to distribute Products and merchandise hereunder.

          (iv)  The exercise of The End's rights hereunder shall not obligate The End to make any payments except as set forth herein, including without limitation, mechanical royalties or other publishing royalties or obtain consents, permissions or licenses from any third party.

          (v)  Label has not sold, assigned, transferred, leased, conveyed or granted a security interest, or otherwise disposed of, and will not sell, assign, transfer, lease, convey or grant a security interest in and to the Recordings or Products.

          (vi)  Label is an LLC duly organized, existing and in good standing under the laws of California.

          (vii)  The rights granted to The End hereunder are exclusive during the Term and in the Territory.

     (b)  The End hereby warrants and represents to Label that:

          (i)  No agreement of any kind heretofore or hereafter entered into by The End or its principals, officers, shareholders, directors, representatives, agents or other parties deriving rights from The End, will interfere in any manner with the rights of Label or third parties

          (ii)  The End possesses all right and power to enter into and fully perform this agreement.

14.  *Indemnification*:

     (a)  Label shall indemnify The End (and its distributor and authorized third parties) against all actions, claims, demands, liabilities, costs, charges and expenses whatsoever (including without limitation legal fees) which The End (and its distributor and authorized third parties) may suffer or incur as a result of any breach of Label of its warranties, representations, agreements or undertakings contained in this agreement.

(b) The End shall indemnify Label against all actions, claims, demands, liabilities, costs, charges and expenses whatsoever (including without limitation legal fees on an indemnity basis) which Label may suffer or incur as a result of The End infringing on the rights of third parties, including a third party claim made against Label as a result of The End exercising rights not granted to The End hereunder.

15.    *Protections.* The End requires (i) a priority security interest in the Label's inventory under The End's and its distributor's control and the proceeds thereof; (ii) a guaranty that the Label's next distributor shall accept all post-Term returns; and (iii) that if the Label's account is in a negative balance and the Label fails to make payment to The End in the amount of such negative balance within thirty (30) days following The End's request, The End shall have the right to dispose of the inventory in any manner it so chooses within the Territory.

16.    *Approvals.* Wherever in this agreement your consent or approval is required, such consent or approval shall not be unreasonably withheld, may be given via e-mail and shall be given or denied within five (5) business days. Failure to give or deny approval as aforesaid shall be deemed to be your consent or approval.

17.    *Termination Rights.* Label shall have the right to terminate the Term upon notice to The End if The End does not have agreement(s) in effect for the distribution or sale of its Records in the United States for a period in excess of thirty (30) consecutive days during the Term. If after the notice and cure provisions of paragraph 18(c) below, The End does not have an agreement in place for physical distribution and Label desires to terminate the Term, then Label shall pay The End the full amount of its unrecouped balance. As of the date of such repayment, this agreement shall be deemed terminated.

18.    *Miscellaneous*:
    (a)    Nothing contained herein shall constitute a partnership or joint venture between Label and The End and/or its distributor.

    (b)    Neither party shall disclose to any third party (other than their advisors or a court) any matters pertaining to the confidential business of the other party.

    (c)    Neither party shall be entitled to take action by reason of any alleged breach by the other party of its obligations hereunder, unless the breaching party has failed to remedy such breach within thirty (30) days following receipt of the other party's written notice thereof.

    (d)    This agreement shall be construed and governed by the laws of New York, and the courts of New York shall be the courts of exclusive jurisdiction.

    (e)    The End shall have the right to assign this Agreement to any third party acquiring a majority of The End's assets. Label shall not assign or transfer any or all of its rights under this agreement without The End's express written agreement.

    (f)    Any notices to be served hereunder (unless otherwise stipulated) shall be served by pre-paid, registered or recorded delivery post, or by a courier service requiring the signature of the recipient (such as UPS, DHL, FedEx, etc.) upon the relevant party at the addresses set . forth on page 1 hereof and such notices shall be deemed served upon confirmed receipt of such post.  A copy of notices to The End shall be sent to Samantha Rhulen, Esq., Roberts Ritholz Levy Sanders Chidekel & Fields LLP, 235 Park Avenue South, New York, New York 10003. A copy of all notices to Label shall be sent to  King, Holmes, Paterno & Berliner, LLP, 1900

Avenue of the Stars, #2500, Los Angeles, CA  90067 attn: Peter Paterno, Esq.. Either party's inadvertent failure to send such copies shall not be deemed a breach of this agreement.

(g)     This agreement shall constitute the entire understanding between the parties; any agreed amendment(s) shall be in writing and signed by both parties.

(h)     Each party and its counsel reviewed and negotiated the terms and provisions of this agreement and have contributed to its revision.

(i)     The rule of construction that any ambiguities are resolved against the drafting party shall not be employed in the interpretation of this agreement.

(j)     The terms and provisions of this agreement shall be construed fairly as to all parties, regardless of which party was generally responsible for the preparation of this agreement.

IN WITNESS WHEREOF, the parties have executed this agreement as of the date first above written.

EVILIVE MUSIC LLC                                THE END RECORDS

By:_____            By:_____
     An Authorized Signatory                        An Authorized Signatory

**SCHEDULE A**
**To the agreement between The End Records, Inc. and Evilive Records**
**Dated as of**
**February    , 2010**
**Licensed Catalogue Albums**

Glenn Danzig Black Aria
Danzig Blackacidevil
Danzig Sacrifice
Danzig 6:66 Satan's Child
Danzig ~~Samhain~~ Circle of Snakes    AK.
Samhain Initium
Samhain November-Coming-Fire
Samhain Final Descent
Samhain Unholy Passion
Sahmain Live 85-86
Danzig The Lost Tracks of Danzig
Glenn Danzig Black Aria 2
Gorgeous Frankenstein Gorgeous Frankenstein

**EXHIBIT A**

**RED'S RATE CARD**